We will call the next case, or the last case of the day, I believe. 311-0616, Carter P. Larry, Cappelli, David B. Reeves v. Village of Bollingbrook, et al., Appellant Lisa C. Holloway. I'm sorry, Ms. Holloway? Yes. Welcome. Proceed. Thank you. This appeal today arises out of the denial of a post-trial motion presented to the Circuit Court for a judgment notwithstanding a verdict that was entered after a jury trial. The underlying action was a negligence action that was filed by the Village of Bollingbrook against Carter E. Larry as a result of an automobile collision that occurred. The defendant, Carter E. Larry, had also filed a counterclaim, a willful and wanton counterclaim. The jury verdict was in favor of Carter E. Larry on both the underlying complaint and the counterclaim. And the decision of the jury, in my opinion, does not have any foundation in the evidence that was presented at trial. There was a willful and wanton standard because the Village of Bollingbrook had a police officer, Officer Block, who was in the operation of his employment when this collision occurred. The evidence presented at the trial is that Officer Block was traveling eastbound in his police cruiser on Boughton Avenue, received a call from dispatch of an hysterical female screaming, he's dead, he's dead. He activated his lights, continued down Boughton Road. The traffic light ahead of him at an intersection was red the entire time. He proceeded into the left turn lane with his light still activated and the traffic light in front of him still red. It was 5 a.m. on a Sunday morning. There were no weather conditions at issue here. When he entered the intersection, he noted in his peripheral vision that the light for the cross traffic in front of him was yellow. When he entered into the left turn lane to enter into the intersection, he slowed upon entering into the intersection. And then when he entered into the intersection, he was struck by his off-duty boss, the defendant Carter E. Larry, who was traveling northbound on Delaware through the intersection on his way home. At no point does any of the evidence that was presented at the trial support a jury finding of willful and wanton in this situation. What's the speed limit on the cross street there? The speed limit on Delaware was 25 because it is entirely a residential street all lined by houses. And what was the officer's, the on-duty officer's speed when he went through this intersection? Well, on the road that he was traveling on, Boughton had a speed limit of 40. And his testimony is that the highest rate of speed he ever reached was the speed limit and that he was going 40 when he entered into the left turn lane and then slowed before entering into the intersection. Slowed to what? He never gave a definite speed. And this other vehicle was coming from his right? That is correct, yes. And there's a fence there that makes that kind of a blind intersection? Yes, that was the testimony from both of them, yes. So he drove that squad car through that red light into a blind intersection? You don't think that would support willful and wanton? Well, I think his testimony is more to his frame of mind that because of the light amount of traffic and the time of day that it was, and that he could see that the light for the cross traffic upon entering the intersection, his testimony actually was that it was yellow when he entered the left turn lane, he could see the northbound Delaware traffic light yellow, and upon crossing over into the intersection believes that it turned to red. So in his frame of mind, there was not going to be any traffic coming. And he did see the defendant at the very last minute when he entered the intersection, but at that point there was nothing he could do to avoid it. If he actually saw the guy coming, then we'd be talking about intentional conduct, right? But it seems to me the evidence supports somebody saying he decided to play the odds on this and drove through this red light into an intersection, you know, against a red light. I don't think he intentionally collided with that car. So if he saw the guy, then we'd be talking about intentional conduct. Right. But, you know, red lights or no going into a blind intersection at that speed like that seems to me to be a little bit like playing Russian roulette. And he lost. You don't think a reasonable person could conclude that driving into a blind intersection against a red light would show reckless disregard for the safety of yourself and others? Well, and I certainly think that his actions probably could be considered negligent. But whether or not they rise to the level of a reckless disregard for human life, I mean, his testimony, his frame of mind around all of his actions indicate that he was doing everything he believed he could be doing in order to be careful, given the set of circumstances that he was in. One thing police officers learn is no matter how urgent the call, you've got to get there safely. And he didn't come blasting through red lights and stuff. So that circumstance. And we're talking about whether any reasonable finder of fact that it concluded. Isn't that the standard review here? Yes, it is. All right. That's all the questions. Go ahead. You know what? I'll just leave it at the questions. I'll let Mr. Reeves say what he has to say, and then I'll come back and grace you with some more. All right. Thank you. Mr. Reeves. May it please the Court. My name is David Reeves. I represent the FLE, Mr. Carter Larry. As you heard, you see in the briefs, this is a fairly unusual traffic accident in the fact that it's two village Bolingbrook police officers involved. One being the boss of the other, who's off-duty. The other is on patrol. Also, in this scenario, is also another on-duty Bolingbrook police officer who is stopped on Fountain facing eastbound, who is also on a different call for a domestic situation, which Officer Block was previously tailing Officer Regalado to follow her onto that call. He then got dispatched onto this subsequent call. The trial proceeding was fairly seamless. It started with a jury instruction conference, and Officer Block, or the village of Bolingbrook, through Officer Block, had a negligence standard for their property damage. And Officer Larry's counterclaim had the Wilflin 1 standard, so we presented the jury instructions properly to the jury. Contained within those jury instructions was also a General Order 29, which is the village of Bolingbrook's operating procedures for routine calls, emergency calls, and priority calls. During this particular situation, Officer Block gave testimony that he was proceeding, as counsel indicated, to a call that stated a hysterical female saying, he's dead, he's dead. Officer Block was not the primary officer responding to this situation. He was a secondary officer responding to the situation. Lieutenant Carter Larry gave testimony that this would be classified as a priority incident, meaning that both your lights and or siren are required, but you must stop at all intersections to adverse traffic signals. Officer Block had testified that he believed this was an emergency situation. At any rate, an emergency situation required both lights and sirens. So in this scenario, Officer Block neither applied the priority designation or the emergency designation when responding to this traffic call. In addition to that, it was argued that he did not apply the due care that is required, the due caution and care that's required, according to the Illinois statute when proceeding to calls. In this particular situation, Officer Block gave the justification of why he did not follow procedure, why he did not stop at the intersection properly and look at traffic before entering, and why he did not even know what the procedure was, is that it was 5 o'clock in the morning, that traffic conditions were light, and that he didn't want to disturb the residents in the neighborhood. He realizes that he's traveling through a residential neighborhood at this time, and he does not feel it's necessary to use the lights and the sirens to notify other motorists on the roadway of his intention to travel through the adverse signal at the intersection. Strangely enough, for a motor vehicle collision, you have the testimony of three police officers who witnessed the collision, or were at least at the scene of the collision. Officer Regalado testified that she was sitting at the intersection at a red light and had not moved at any time prior to this impact occurring. She testified there was a vehicle in front of her, and all parties testified that there was a vehicle in the left-hand through lane. So in order for Officer Block to go into this intersection against the red traffic signal, he had to go around traffic both in the right-hand and the left-hand lanes, enter into the left turn lane, and proceed straight through the intersection. When he initiated from dispatch to go to this call, his dash cam activated. The dash cam was played for the jury on three separate occasions. They had an opportunity to see how this collision occurred and compare it to his testimony. His testimony, indicating that he slowed before entering the intersection, and that the traffic light, how he observed the traffic light as he's traveling 40 miles per hour, looking up at the traffic light and observing not his traffic light, but the traffic light for Lieutenant Larry's direction of travel, northbound, turns from green to yellow, and then ultimately what was said today, red. That was not indicated in the video review. Now, Officer Block had the opportunity to get up and stand before the jury in conjunction with the video playing, and show where he thought that occurred. The jury is the trier of fact. They have the ability to determine whether or not the willful and wanton standard was justified in this case, and the application of that standard was correctly explained to them in the delivery of the jury instructions. During the course of the trial, there were no objections to the jury instructions. At the conclusion of evidence, the jury awarded in favor of Lieutenant Larry on the original claim, and for Lieutenant Larry on his counterclaim for property damage and medical payments, because he was injured in this collision under his private insurer. The factual evidence in this case supports a willful and wanton finding for multiple reasons. One, he did not follow the proper protocol that Lieutenant Larry actually instructed him upon, which was the General Order 29. He did not follow the proper protocol for the state of Illinois. He did not follow any justifiable police officer reasoning in burning through this residential neighborhood at 40 miles an hour and going through the adverse red light, other than saying he didn't want to wake up the neighborhood by turning on his siren, which conversely gives the other motorists on the roadway no indication in this blind intersection that he's going to buzz through the intersection, which resulted in this collision. There was no jury finding that was unreasonable. There was no jury finding that was arbitrary, and there is sufficient evidence to base this award. In a motor vehicle collision, it's rare that you have anyone other than the two parties testify as to how the collision occurred, and it's not unusual there would be a question of a light. However, in this particular case, you have video evidence as to how the collision occurred. It was watched three times by the jury. You have multiple police officers testifying, and there's really no general disagreement as to what the color of the light was at the time he entered the intersection. Officer Regalado was sitting in a red light. She was also proceeding to a call. She did not go through the adverse red light. There may have been a different classification as to what type of call she was going to, or it might have been the same. In this situation, Officer Block, he put the safety of others at risk. He was clear in his explanation as to why he did that, and that amounts to reckless conduct. It's clearly reckless conduct. There was some stated within the briefs. There is an argument as to whether or not the general order 29 of the Bolingbrook Police Department would be an indication or amount to a willful and wanton finding in this particular case. Counsel for the appellant, she filed a motion for judgment notwithstanding the verdict, and that motion was denied. Judge O'Leary stated in denying that motion that the case of Hudson v. City of Chicago applies, wherein they say, countermanding a police department general order does not constitute negligence or willful and wanton. However, it was interpreted to implicitly indicate that violation of an internal police department rule can constitute some evidence of willful and wanton conduct. Therefore, in conjunction with the factual evidence that was presented in this case, which was ample, not only was this a blind intersection that Officer Block knew about before this collision occurred, but he did not follow the police protocol for responding to calls. Much of the cases cited in the appellant's brief have to do with pursuit of suspects, and whether or not during the pursuit of the suspect an officer is required to use a signal and a siren. Those situations, many of those cases cited, indicate that during a pursuit situation, which is wholly factually different from what were presented here, that there's different findings as to whether they're required to use a signal and a siren or not. However, in a majority of those cases, if not all those cases, the result was the offending party that was fleeing the officer ended up striking another vehicle and causing an injury. It wasn't the officer or the officer's reckless conduct in pursuing that person that caused the actual impact or death in certain situations. So, in this particular case, there's ample evidence to support a finding for the willful and wanton standard as applied by the jury. And the jury in this case is the finder of fact. They are to determine whether or not the factual evidence presented to them rose to the level of a willful and wanton count, and they did so in this case. Judge O'Leary reviewed the case in the post-trial motion. She cited to Hudson V. City of Chicago in indicating that in conjunction with the factual evidence, it was proper and agreed upon by the parties to submit the General Order 29, which was included in the jury instructions, as well as multiple statutes for the state of Illinois, and not only that, but the willful and wanton statute and the negligence statute. Now, those were explained by the judge when read to the jury, and they were also explained by counsel and the differences between those two. The jury's finding in this case was not arbitrary. They're members of the community drawn to serve on a jury. They could easily use their own experience in determining whether they thought this police officer's conduct was reckless in what he did and what he said, why he did it, why he didn't follow the police general order, and why he determined to come up with his own protocol when responding to this call and fly through this intersection. And I would submit that the jury's finding, they had the opportunity to view in full speed whether or not he actually slowed before entering the intersection and whether that slowing before the intersection really amounted to much, because I would submit that upon viewing the evidence, this happened in a matter of seconds, and viewing the evidence from the dash cam didn't take very long. It was viewed multiple times for that purpose. So we would ask that the finding of the jury be affirmed in this case and that the judgment be sent. Thank you. Thank you, Mr. Reeves. Ms. Holloway, any rebuttal? I just have a couple things to say. Officer Block certainly owes a duty to other drivers on the road, but also as a Village of Bolingbroke police officer, he owed a duty to the public at large, to the individuals that were involved in this entire situation, to the ones that were involved in the 911 call that he was responding to, as well as to his fellow officers who were present at the scene and who he was going to. How did he help them? How did he help those people at that scene that he was responding to? At the scene that he was responding to? Well, obviously he didn't because he never made it there. So he breached his duty to them as well, didn't he? Well, but he was weighing all of these things in his mind in the decision that he made under these circumstances to enter this intersection. These were all things that he had to take into consideration when he received the call from dispatch. And given the circumstances the way that they were, his actions don't exhibit a reckless disregard for human life. He slowed upon entering the intersection. The police department themselves did not reprimand him for any of his actions. He underwent a police review board where they determined him to not be at fault for the accident. Even his own boss did not reprimand him for this situation. And he hit his boss in the intersection. So I would submit to you again that the evidence here does not support the trier of fact, determining that this officer was willful and wanting. They had to have either misunderstood what willful and wanting meant or misapplied it to the circumstances in this situation. Any other questions? Are we all done? Okay, all right. Thank you, Ms. Holloway. Mr. Reeves, thank you both for your arguments here this afternoon.  A written disposition will be issued.